IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JENNIFER R. BAILEY-JERMEA, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07-G-1601-J |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Jennifer R. Bailey-Jermea, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

>    (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while the plaintiff's seizure disorder with complex partial seizures, bipolar disorder, and personality disorder, not otherwise specified, with cluster B traits, are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 15].  The ALJ found that the plaintiff retains the residual functional capacity to perform a limited range of medium work.  [R. 16].  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions

about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by

substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

As found by the ALJ, the plaintiff has the following "severe" impairments: "a seizure disorder with complex partial seizures; a bipolar disorder; and a personality disorder, not otherwise specified, with cluster B traits." [R. 15]. Indeed, records from Northwest Alabama Mental Health Center reflect her treatment from June 2003 through July 2004. [R. 311-335]. On June 25, 2003, the plaintiff was diagnosed with bipolar disorder "mixed severe with psychotic features." [R. 334]. The plaintiff was given a GAF score of 50.[1] She was evaluated using the Beck Depression Inventory (BDI) on July 23, 2004, and scored a 48, indicating "severe" depression. [R. 313].

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

The plaintiff was also assessed by Social Security consulting psychologist, Ronald Bray, Ph.D., on July 9, 2003. Dr. Bray deferred an Axis I diagnosis at that time, but gave an Axis II diagnosis of personality disorder not otherwise specified (with antisocial and borderline traits. [R. 242]. Dr. Bray concluded:

> The information provided by [the plaintiff] is judged to have questionable validity due to her tendency to exaggerate symptomatology, vagueness in providing information, and symptoms suggesting malingering. There were no signs or symptoms of depression or bipolar disorder. The claimant's long-standing personality problems are likely to lead to interpersonal disputes with friends and family members and conflicts or difficulty interacting with supervisors or coworkers. Compromised insight and judgment are evidenced by a tendency to attribute problems to other people or events, conflictual relations with family, friends, and/or acquaintances, and feelings of justification in her school bomb threat.

[R. 243].

The ALJ did not give the plaintiff's GAF score assessment substantial weight "in view of Dr. Bray's assessment regarding the claimant's exaggerating her symptoms." [R. 17]. However, the ALJ failed to recognize that the record contains numerous GAF assessments of 50.[2] Similarly, the ALJ failed to discuss a second psychological evaluation by Dr. Bray performed on January 6, 2004. [R. 259-263]. Dr. Bray performed an MMPI-2 test, and gave an Axis I diagnosis of schizophrenia, paranoid type, continuous (rule out bipolar) and depressive disorder not otherwise specified, and an

---

[2] September 3, 2002: GAF of 50 [R. 149]; February 13, 2003: GAF of 50 [R. 139]; June 25, 2003: GAF of 50 [R. 334]; and January 19, 2004: GAF of 50 [R. 324], for example.

Axis II diagnosis of personality disorder not otherwise specified. [R. 263]. Compared to his first examination, Dr. Bray had a different opinion regarding the plaintiff's credibility:

> It is my opinion that [the plaintiff] was an adequately reliable informant for current purposes. Her appraisals tended to corroborate clinical observations and information obtained elsewhere. It is also my opinion that she is in need of treatment, probably inpatient, in order to stabilize her psychosis. At a minimum she should be placed on an antipsychotic such as Zyprexa and followed with individual counseling.

[Id.]. The ALJ committed reversible error in ignoring this second report by Dr. Bray.

The plaintiff was sent to a third psychological consultative evaluation on February 13, 2004. [R. 274-277]. Alwyn S. Whitehead, Jr., a licensed clinical psychologist, performed a mental status examination and gave an Axis I diagnosis of bipolar disorder vs. major depressive disorder and mild panic disorder without agoraphobia. [R. 276]. Dr. Whitehead concluded that "the results of the clinical interview may be considered a valid indicator of the claimant's ability." [R. 277]. Dr. Whitehead found:

> Psychologically, this claimant appears capable of understanding, carrying out, and remembering simple to moderately complex instructions, but has moderate to severe difficulty responding appropriately to supervision, coworkers and work pressures in a work setting.

[Id.]. The plaintiff was evaluated again by Dr. Whitehead in December 2004. [R. 361-363]. His Axis I diagnosis was bipolar disorder, Type II, and nicotine dependence, while his Axis II diagnosis was rule out borderline intellectual functioning, personality disorder, not otherwise specified, with cluster B traits. [R. 363]. Dr. Whitehead again found that

the plaintiff "would have moderate to severe difficulty responding appropriately to supervision, coworkers and work pressures in a conventional work setting." [Id.].

The ALJ gave Dr. Whitehead's opinion "substantial weight to the extent that the claimant has no more than moderate difficulty with responding to supervision, co-workers and usual work pressures and with maintaining social functioning." [R. 18]. This is a misstatement of Dr. Whitehead's report, as he clearly stated the plaintiff's difficulty in responding would be moderate to <u>severe</u>.  Moreover, by picking and choosing parts of the report that support his finding of not disabled, while ignoring and misstating the substance of the entire report, the ALJ committed reversible error.  The ALJ's reasoning makes it clear that he is substituting his own opinions for those of two psychiatrists.  In cases involving mental illness, the opinions of mental health professionals are especially important

The present case bears a resemblance to the situation in <u>Wilder v. Chater</u>, 64 F.3d 355 (7th Cir. 1995).  In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner.  The <u>Wilder</u> court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the <u>only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself</u> to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression.  Severe depression is not the blues.  It is a mental illness; and <u>health professionals, in particular psychiatrists, not lawyers or judges, are</u>

the experts on it.  The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight.  We do not say conclusive weight;  but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement.  He is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, an ALJ may not arrogate the power to act as both judge and physician. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his

> responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Stout has abused his discretion by substituting his own medical judgments for those of two examining psychologists. The ALJ cites to the evaluation by a non-examining medical consultant to support his rejection of the two examining psychologists. [R. 18]. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

The vocational expert ("VE") was asked whether an individual having greater than a moderate restriction in activities of daily living, social functioning and concentration, persistence and pace would preclude work. The VE testified that these restrictions "would preclude any jobs in the national or regional economy." [R. 594].

The court concludes that substantial evidence does not support the ALJ's decision not to credit and to ignore the opinions of the plaintiff's treating psychiatrist, who consistently assessed her GAF at 50, or those of the Commissioner's consulting psychologists. Based upon these opinions and the testimony of the VE, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 24 October 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.